UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHEN B. BRADLEY, | ) | |
| | ) | |
| Plaintiff, | ) | 19 C 903 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Stephen Bradley sues the United States for negligence under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, based on an injury he suffered while performing HVAC work in the employ of Complete Temperature Systems, Inc. ("CTS") at a United States Postal Service ("USPS") facility. Doc. 1. The United States moves for summary judgment. Doc. 37. The motion is denied.

### Background

**A.    Local Rule 56.1 Issues**

Consistent with the Local Rules, the United States filed a Local Rule 56.1(a)(3) statement of undisputed facts along with its summary judgment motion. Doc. 39. (Although amendments to Local Rule 56.1 became effective on February 18, 2021, the court cites the earlier version because most of the briefing on the present motion preceded the changes.) The statement's factual assertions are supported by the evidentiary material cited by the United States. *See* N.D. Ill. L.R. 56.1(a) (2020) ("The statement referred to in (3) shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph."). Local Rule 56.1(b)(3)(B) required Bradley to file "a concise response to the

1

[United States's] statement [containing] … a response to each numbered paragraph in the [United States's] statement." N.D. Ill. L.R. 56.1(b)(3)(B) (2020). He did not do so.

Local Rule 56.1(b)(3) provides that "[a]ll material facts set forth in the [Local Rule 56.1(a)(3)] statement … will be deemed to be admitted unless controverted by the [Local Rule 56.1(b)(3)(B)] statement of the opposing party." N.D. Ill. L.R. 56.1(b)(3) (2020). Because Bradley did not file a Local Rule 56.1(b)(3)(B) response, the court deems admitted the Local Rule 56.1(a)(3) statement's factual assertions "to the extent the[y] … [a]re supported by admissible and docketed evidence." *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 411 (7th Cir. 2019) ("According to well-established Seventh Circuit law, [the non-movant's] noncompliance [with Local Rule 56.1(b)(3)(B)] meant that the district court could exercise its discretion to accept [the movant's] statements of fact as undisputed.") (quotation marks omitted); *see also Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218 (7th Cir. 2015) ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion.") (quoting *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009)).

Bradley did file a Local Rule 56.1(b)(3)(C) statement of additional facts. Doc. 43-2. But Bradley's submission of a compliant Local Rule 56.1(b)(3)(C) statement does not excuse his failure to comply with Local Rule 56.1(b)(3)(B). It follows that any of Bradley's Local Rule 56.1(b)(3)(C) factual assertions that directly contradict the United States's Local Rule 56.1(a)(3) factual assertions are disregarded. *See Rodriguez v. City of Berwyn*, 2018 WL 5994984, at *1 (N.D. Ill. Nov. 15, 2018) ("Because the only proper vehicle for disputing factual assertions in a Local Rule 56.1(a)(3) statement is a Local Rule 56.1(b)(3)(B) response, the court will hold Plaintiffs to their admissions and disregard their Local Rule 56.1(b)(3)(C) assertions to the extent

those assertions conflict with their admissions."); *see also Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008) (affirming the district court's "refus[al] to consider [the] [Local Rule 56.1(b)(3)(B)] response" where the non-movant "did not separate his proposed facts from his responses to [the movant's] proposed material facts").

That said, the court is mindful that "a nonmovant's failure to respond to a summary judgment motion, or failure to comply with Local Rule 56.1, does not … automatically result in judgment for the movant. [The movant] must still demonstrate that it is entitled to judgment as a matter of law." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (citation and quotation marks omitted). Accordingly, the court recites the facts as favorably to Bradley as the record and Local Rule 56.1 permit, and then decides whether, on those facts, summary judgment is warranted. *See Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018). At this juncture, the court must assume the truth of those facts, but does not vouch for them. *See Gates v. Bd. of Educ. of Chi.*, 916 F.3d 631, 633 (7th Cir. 2019).

B.    **Material Facts**

On October 6, 2015, the USPS retained CTS to repair several air handlers at its Chicago International Military Service Center. Doc. 39 at ¶¶ 4, 16. At the time, Bradley was employed by CTS as an HVAC service technician. *Id*. at ¶ 3.

CTS sent Bradley to perform the work the next day. *Id*. at ¶ 17. Upon arriving at the Service Center, Bradley met with a USPS employee whom Bradley described at his deposition as "an older guy." Doc. 40-1 at 20 (71:22). The employee's identity is not known with certainty, but the United States asserts it was likely Eugene Steinberg, who has since died. Doc. 39 at ¶ 17 & n.1. Bradley and Steinberg spoke briefly. Doc. 40-1 at 20 (72:3-5). Bradley asked Steinberg, "where do I bring my ladders in?" *Id*. at 23 (84:2-3). Steinberg replied that Bradley was

3

required "to use the Post Office's ladders," which were "already in the rooms" where he would be working. *Id*. at 23 (84:3-4).

Steinberg then introduced Bradley to Randolph Krieger, the USPS employee responsible for the Service Center's HVAC system. Doc. 39 at ¶ 17. Krieger asked Bradley to inspect an air handler in the "mezzanine" level. *Id*. at ¶¶ 19-20. There was no stairway or elevator to the mezzanine, but there was a fixed vertical ladder. *Id*. at ¶ 21; Doc. 41-1 at 49. Another way to reach the mezzanine was with a mechanical lift, which could be moved into place temporarily as the need arose. Doc. 39 at ¶¶ 21, 54; Doc. 46 at ¶¶ 6-7.

The air handler in the mezzanine looked like a large metal box, with an opening used for maintenance about eight feet above the mezzanine floor. Doc. 39 at ¶ 22; Doc. 41-1 at 50-51. Krieger asked Bradley to diagnose why the unit's blower was not working, but did not provide further instructions. Doc. 39 at ¶ 23. Krieger then left Bradley alone to perform his work. *Id*. at ¶ 24. Bradley testified at his deposition, and for purposes of this motion the court must accept as true, that an A-frame ladder was already leaning against the air handler when he and Krieger reached the mezzanine. *Id*. at ¶¶ 25, 32; Doc. 46 at ¶ 10.

At this point, it is important to distinguish A-frame ladders from extension ladders. An A-frame ladder has two front rails and two rear rails, which can be spread apart and locked in place to form an "A" shape. Doc. 39 at ¶ 5. Once opened and locked, an A-frame ladder is self-supporting. *Ibid*. An extension ladder, by contrast, has two parallel sections that slide past each other to adjust the ladder's length. *Id*. at ¶ 6. Extension ladders are not self-supporting and must lean against a stable structure. *Ibid*. In his many years of HVAC experience, Bradley received extensive training on the proper use of the two types of ladder. *Id*. at ¶¶ 7-8, 10-14. Most significant here, Bradley knew that an A-frame ladder should never be used as a substitute for an

4

extension ladder, leaned up against a structure in the closed position. *Id*. at ¶ 13. Bradley himself points to Occupational Safety and Health Administration guidance cautioning that a person should not "use a self-supporting ladder … as a single ladder or in a partially closed position." Doc. 46 at ¶ 20; Doc. 43-4 at 26.

Nevertheless, Bradley decided to use the A-frame ladder in the mezzanine as he found it: in the closed position leaned against the air handler. Doc. 39 at ¶ 40; Doc. 46 at ¶¶ 15-16. The parties dispute why Bradley decided to do so despite his knowing that it was unsafe. Doc. 43-2 at ¶¶ 16-24. The USPS asserts that it was a voluntary choice, citing Bradley's testimony that he "took that risk assessment" and "[t]here's no other way to set a ladder up in [t]here, any ladder." Doc. 39 at ¶ 40; Doc. 40-1 at 26 (97:17-22). As noted, however, Bradley also testified that Steinberg directed him not to use another ladder. Doc. 46 at ¶ 12; Doc. 40-1 at 23 (84:1-4). That directive aligned with Bradley's previous experience that the USPS preferred that its contractors use USPS ladders. Doc. 46 at ¶ 13. Bradley testified that he had "do[ne] a lot of work with the Post Office," and that this ladder policy was "pretty much their rules through all of their facilities." Doc. 40-1 at 24 (86:13-18). In addition, Bradley thought that CTS just wanted him to "get the job done." Doc. 46 at ¶ 15; Doc. 40-1 at 26 (97:20). At this stage, the court must accept as true Bradley's testimony that Steinberg directed him to use the A-frame ladder.

Bradley climbed up and down the ladder twice without incident. Doc. 39 at ¶¶ 41-43. He then ascended for a third time and entered fully into the air handler's opening. *Id*. at ¶ 44. As he attempted to get back on the ladder to descend, it slid out from under him, and he fell to the mezzanine floor from about eight to ten feet up. *Id*. at ¶¶ 45-46.

Bradley called CTS, which in turn contacted the USPS and paramedics. *Id*. at ¶ 50. Bradley then used his phone to send CTS a photograph of the ladder, which he reset in the open

5

"A" position. *Id*. at ¶ 53; Doc. 41-1 at 81. When Krieger learned of the accident, he returned to the mezzanine, where he found Bradley on his feet and the A-frame ladder upright in the open "A" position. Doc. 39 at ¶¶ 51-52. Bradley testified that he reset the ladder properly after his fall because he was embarrassed: "I got up and set the ladder up, like, I didn't want somebody to know I fell." Doc. 40-1 at 38 (142:15-17).

Paramedics arrived and took Bradley to the hospital, and he was ultimately diagnosed with right shoulder injuries that required surgeries and physical therapy. Doc. 39 at ¶¶ 54-56. In September 2017, Bradley presented a claim to the USPS seeking damages based on its providing him with unsafe equipment. *Id*. at ¶ 59; Doc. 41-1 at 69-74. The USPS denied the claim in August 2018, finding that it had not acted negligently. Doc. 39 at ¶ 59; Doc. 41-1 at 78-79. Bradley timely filed this suit in February 2019, bringing the same claim. Doc. 1; *see* 28 U.S.C. § 2401(b) (providing that an FTCA suit must be filed within six months of the mailing of the agency's denial).

## Discussion

As the parties agree, Doc. 38 at 10-11; Doc. 43-1 at 2, Illinois law governs this FTCA suit because it arises from injuries occurring in Illinois. *See* 28 U.S.C. § 1346(b)(1) (granting jurisdiction over suits against the United States "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred"); *Smith v. United States*, 860 F.3d 995, 998 (7th Cir. 2017) ("The FTCA incorporates the substantive law of the state where the alleged tort occurred.").

### I. Prima Facie Case of Negligence

Before proceeding, the court addresses a preliminary question: whether Bradley brings three claims or just one. The complaint purports to bring three different negligence claims, styled as "General Negligence," "Contractor Negligence §414 Restatement (2nd) of Torts," and

"Premises Negligence §343 Restatement (2nd) of Torts." Doc. 1 at pp. 5, 7, 10. Section 414 addresses the circumstances under which someone who hires an independent contractor can be held liable for injuries connected to the contractor's work. Restatement (Second) of Torts § 414 (Am. Law. Inst. 1965). Section 343 addresses the circumstances under which a landowner can be held liable for injuries suffered on its premises by an invitee. *Id*. § 343. According to Bradley, his general "common law negligence" claim is "distinct from" his § 414 contractor negligence and § 343 premises negligence "claims." Doc. 43-1 at 2. The United States accepts this framing, arguing separately for summary judgment on each of the three ostensible claims. Doc. 38 at 10-18. The United States's concession on that point of law does not bind the court, however. *See Krieger v. United States*, 842 F.3d 490, 499 (7th Cir. 2016). And, in fact, Bradley has only one negligence claim.

First, as a matter of substantive Illinois law, §§ 343 and 414 describe types of negligence, not freestanding causes of action. In *Carney v. Union Pacific Railroad Co.*, 77 N.E.3d 1 (Ill. 2016), as in this case, the defendant landowner hired an independent contractor to perform work, the contractor in turn hired the plaintiff, and the plaintiff was injured at the site. 77 N.E.3d at 3-4. The Supreme Court of Illinois began its analysis with the familiar elements of common law negligence: "[T]he plaintiff must plead and prove the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and injury proximately resulting from the breach." *Id*. at 6. The court explained that "[t]he duty inquiry focuses on 'whether defendant and plaintiff stood in such a relationship to one another that the law imposed upon defendant an obligation of reasonable conduct for the benefit of plaintiff.'" *Ibid*. (quoting *Ward v. K Mart Corp.*, 554 N.E.2d 223, 226 (Ill. 1990)). The court then stated that the plaintiff "alleged *three theories* under which … [the] defendant owed him a duty of reasonable care," including "section 414

7

('Negligence in Exercising Control Retained by Employer')" and "section 343 ('Dangerous Conditions Known to or Discoverable by Possessor')." *Id*. at 7 (emphasis added). Confirming that it viewed those "theories" as different means of proving a negligence claim rather than as independent claims in themselves, the court held that "[s]ection 414 sets forth *one way in which an employer of an independent contractor may be negligent* and, thus, directly liable for physical harm to others." *Id*. at 9 (emphasis added).

Second, as a matter of federal procedure, "[a] claim is the aggregate of operative facts which give rise to a right enforceable in the courts." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 399 (7th Cir. 2012) (quotation marks omitted). There is only one set of operative facts here—the use of the A-frame ladder leading to Bradley's fall—and hence one claim. In *Sojka*, a construction worker employed by a subcontractor suffered an eye injury and sued the general contractor. *Id*. at 395. The general contractor moved for summary judgment, arguing that it did not breach any duty of care because it did not know that the plaintiff's protective glasses were inadequate. *Id*. at 395-96. The plaintiff failed to respond to that argument, and the district court granted summary judgment. *Id*. at 396. On appeal, the plaintiff argued that the general contractor had moved only for "*partial* summary judgment because [the plaintiff] had presented multiple reasons to find negligence—one for each of his theories of breach—and [the defendant] discussed only one of those theories, about eyewear." *Id*. at 399. The Seventh Circuit described as "untenable" the plaintiff's characterization of the summary judgment motion as only a partial motion, holding that the "complaint contains one count and one claim, construction negligence, committed in a variety of ways," and that "[o]ne claim supported by multiple theories does not somehow become multiple claims." *Ibid*. The same is true here. While §§ 343 and 414 may

provide different ways for Bradley to show negligence, there is ultimately just one negligence claim.

Resisting this conclusion, Bradley cites *Smart v. City of Chicago*, 43 N.E.3d 532 (Ill. App. 2013), for the proposition that general negligence, § 414 contractor negligence, and § 343 premises liability are in fact distinct claims. Doc. 43-1 at 2. His reliance on *Smart* fails for two reasons. First, *Smart* addressed only § 343 premises liability, not § 414 contractor liability. 43 N.E.3d at 541-46. But Bradley now concedes that the United States breached no duty of care under a § 343 theory and asks for that "claim" to be voluntarily dismissed. Doc. 43-1 at 12-13. So whatever *Smart* says about § 343 premises liability no longer has any relevance to this case. Second, even if *Smart* held that premises liability is a distinct claim from general negligence, the contrary authority from the Supreme Court of Illinois's later decision in *Carney* would control. So *Smart* does not disturb the conclusion that Bradley presents a single negligence claim.

On the merits, Bradley's negligence claim cannot be defeated at summary judgment because a reasonable factfinder could hold the United States liable under a § 414 contractor liability theory. The Supreme Court of Illinois has adopted § 414 "as an expression of Illinois common law." *Carney*, 77 N.E.3d at 8. It provides:

> One who entrusts work to an independent contractor, *but who retains the control of any part of the work*, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise *his control* with reasonable care.

Restatement (Second) of Torts § 414 (emphases added). In a decision that *Carney* cites with approval, the Seventh Circuit explained the role of § 414 liability as follows:

> Where the level of retained control gives rise to a master-servant relationship, the master will be liable for the torts of his servant; this is no-fault vicarious liability and it is based on the principles of agency law, not negligence law. … [S]ection 414 takes over where agency law ends by providing a theory of direct liability based on the existence of a duty of reasonable care. That duty is triggered when the employer—usually a general contractor—has retained

9

> supervisory control over the independent contractor without retaining control
> over all operative details of a project.

*Aguirre v. Turner Const. Co.*, 501 F.3d 825, 829 (7th Cir. 2007).

Even minimal retained control can give rise to a § 414 duty. As the Restatement explains, for the duty to arise, "[t]here must be such a retention of a right of supervision [by the general contractor] that the [independent] contractor is not *entirely* free to do the work in his own way." Restatement (Second) of Torts § 414 cmt. c (emphasis added). And as the Seventh Circuit has observed, "Illinois courts have held that 'an employer need only retain the control of *any part of the work* [of the independent contractor] in order to be subject to liability for a failure to exercise his control with reasonable care.'" *Aguirre*, 501 F.3d at 829-30 (quoting *Brooks v. Midwest Grain Prods. of Ill., Inc.*, 726 N.E.2d 153, 155 (Ill. App. 2000)); *see also Moorehead v. Mustang Const. Co.*, 821 N.E.2d 358, 360 (Ill. App. 2004) ("For the rule to apply, the employer must have retained at least some degree of control over the manner in which the work is done.").

Viewed in the light most favorable to Bradley, the summary judgment record shows that the USPS retained control over one part of his work: the choice of which ladder he would use to reach the air handler's opening. Bradley testified that when he arrived at the Service Center, he asked a USPS employee—probably Steinberg—where he could "bring [his] ladders in." Doc. 40-1 at 23 (84:2-3). Steinberg responded that Bradley had to "use the Post Office's ladders," which were "already in the rooms" where he would be working. *Id*. at 23 (84:3-4). Bradley did not know why the USPS prohibited him from using his own ladders, but understood that "that was their rules." *Id*. at 23 (84:19-20). In fact, Bradley testified that he had done "a lot of work with the Post Office," and that this ladder policy was "pretty much their rules through all of their facilities." *Id*. at 24 (86:15-18). The only time Bradley had used his own ladder at a USPS facility was an "after hours call to get to the roof." *Id*. at 24 (86:23-24).

10

The United States concedes, as it must, that Bradley thus testified that the USPS directed him to use the A-frame ladder that was already in the mezzanine when he arrived. Doc. 46 at ¶ 12. The United States points to other evidence indicating that the USPS policy described by Bradley—that workers at USPS facilities must use USPS ladders—did not exist, Doc. 39 at ¶ 34, but the court cannot resolve this factual dispute in the United States's favor at this stage. *See Lisle v. Welborn*, 933 F.3d 705, 716 (7th Cir. 2019) (holding that a court at summary judgment "may not assess the credibility of the witnesses or balance the weight of conflicting evidence"). The United States also argues that "nothing supports Bradley's allegation that he had no other choice but to use the ladder that the [USPS] provided him *aside from his own say-so*." Doc. 44 at 6 (emphasis added). But a non-movant's testimony at summary judgment cannot be discounted merely because the testimony is helpful to him. *See Johnson*, 892 F.3d at 901 ("Provided that the evidence meets the usual requirements for evidence presented on summary judgment … self-serving testimony is an acceptable method for a nonmoving party to present evidence of disputed material facts.") (quotation marks omitted); *McKinney v. Off. of Sheriff of Whitley Cnty.*, 866 F.3d 803, 814 (7th Cir. 2017) ("Our cases for at least the past fifteen years teach that 'Self-serving affidavits can indeed be a legitimate method of introducing facts on summary judgment.'") (quoting *Widmar v. Sun Chemical Corp.*, 772 F.3d 457, 459-60 (7th Cir. 2014)).

Bradley thus has adduced evidence sufficient for a reasonable factfinder to find that the USPS retained control over which ladder Bradley would use in repairing the air handler. Section 414 next asks whether the USPS "fail[ed] to exercise [that] control with reasonable care" and whether its failure "caused" Bradley's injury. Restatement (Second) of Torts § 414; *see also Carney*, 77 N.E.3d at 6 (holding that a negligence plaintiff must show "a breach of [the

defendant's] duty" and "injury proximately resulting from the breach"); *Foley v. Builtech Constr., Inc.*, 160 N.E.3d 78, 86 (Ill. App. 2019) ("To state a claim for negligence under section 414, the plaintiff must allege that the defendant owed him a duty, that the defendant breached that duty, and that plaintiff's injury was proximately caused by the breach.").

Like the duty element of Bradley's claim, the breach and causation elements cannot be resolved in the United States's favor at summary judgment. Bradley has adduced evidence that there was no way to safely deploy the A-frame ladder at the air handler. Doc. 46 at ¶ 23. In particular, Bradley's expert witness opines that the ladder, "set up as a self-supporting ladder, could never be utilized in a safe manner … to gain access to the elevated confined space, as the ladder [would be] too far away from the opening" when set up in the open "A" position. Doc. 43-4 at 33. A factfinder could reasonably conclude that the USPS's choice of ladder was thus unavoidably dangerous and breached the duty of care. The United States retorts that various configurations of the ladder would have been safer than the one Bradley chose, citing its own expert's opinions. Doc. 46 at ¶ 23 (citing Doc. 41-1 at 42-43); Doc. 44 at 8-9. But that simply raises a genuine fact dispute as to whether the ladder could be safely used in some manner to gain access to the air handler, with conflicting opinions present in the record.

Finally, if the United States owed Bradley a duty of care and breached it, a reasonable factfinder could conclude that the breach caused his injuries. Wrongful conduct is an injury's cause-in-fact under Illinois law "if, absent the conduct, the injury would not have occurred." *Krywin v. Chi. Transit Auth.*, 938 N.E.2d 440, 447 (Ill. 2010). Here, a more appropriate ladder may not have fallen, so this causation element could be satisfied.

Bradley's negligence claim therefore survives summary judgment under the theory of negligence described in § 414. A final question is whether Bradley could establish that the

United States owed him a duty of care under other negligence theories. The United States contends that there is no other avenue elsewhere in negligence law. Doc. 38 at 10-12. Bradley disagrees, Doc. 43-1 at 6-7, but he does not identify what doctrine besides § 414 would give rise to a duty of care. In its reply brief, the United States reverses course and concedes that some claims may fail to satisfy § 414 but nevertheless succeed under Illinois negligence law generally. Doc. 44 at 11-12. There is no need to resolve that issue at this stage. Regardless of whether some other theory of negligence might also defeat summary judgment, a material fact dispute exists under the theory emphasized by the parties, namely § 414. The court expresses no view on whether Bradley might also prove negligence liability on some other theory.

## II.    Contributory Fault

The United States next contends that Bradley's claim is barred by the Illinois contributory fault statute. Doc. 38 at 18-21. The statute prohibits recovery if a plaintiff's share of the fault exceeds 50 percent:

> In all actions on account of bodily injury … based on negligence, … the plaintiff shall be barred from recovering damages if the trier of fact finds that the contributory fault on the part of the plaintiff is more than 50% of the proximate cause of the injury or damage for which recovery is sought.

An Act in Relation to the Insurance Crisis, Pub. Act 84-1431, art. 4, § 1, 1986 Ill. Laws 3740, 3755-56 (codified as amended at 735 ILCS 5/2-1116(c), amendments invalidated by *Best v. Taylor Mach. Works*, 689 N.E.2d 1057 (Ill. 1997)); *see Ready v. United/Goedecke Servs., Inc.*, 905 N.E.2d 725, 732 (Ill. 2008) ("In [*Best*], this court held Public Act 89-7 unconstitutional in its entirety. As a result, section 2-1116 … reverted to the original language of the 1986 version, *i.e.*, the language in effect prior to the adoption of Public Act 89-7."). Put another way, the statute makes "the plaintiff's negligence … a complete defense" to liability if it "exceeds the defendant's [negligence]." *Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861, 865 (7th

Cir. 2010); *see also Tidemann v. Nadler Golf Car Sales, Inc.*, 224 F.3d 719, 726 (7th Cir. 2000) ("If the jury concludes that [the plaintiff's] own negligence was more than 50% of the cause of her injuries, then no damages are to be awarded … .").

The United States makes reasonable arguments for why Bradley was more than 50 percent at fault for his injuries. Bradley was an experienced technician who had gone through many trainings regarding the proper use of A-frame and extension ladders. Doc. 39 at ¶¶ 7-8. Bradley knew that an A-frame ladder should not be used in a closed position as a substitute for an extension ladder. *Id*. at ¶¶ 13, 27. Asked at his deposition whether it is "safe to use an A-frame step ladder like an extension ladder and lean it up against a wall," Bradley responded, "[i]t is not okay." Doc. 40-1 at 18 (65:8-11). In fact, Bradley set up the ladder correctly after he fell. Doc. 39 at ¶¶ 52-53. Despite his knowledge of how to properly use an A-frame ladder, Bradley did not raise any concerns about using the A-frame ladder as he found it in the mezzanine. He did not tell Krieger or any other USPS employee that the ladder was unsafe for that purpose. *Id*. at ¶ 36. Nor did he call CTS to ask for guidance regarding the situation he was confronting at the job site. *Id*. at ¶ 35. Instead, Bradley "took [a] risk assessment," Doc. 40-1 at 26 (97:17), and opted to proceed.

On the other hand, as noted, Bradley testified that the USPS essentially ordered him to use the A-frame ladder already in the mezzanine. Doc. 46 at ¶ 12. Even though the USPS was not his employer, Bradley plausibly maintains that he felt constrained to follow that directive. He thought that CTS would want him to just "get the job done for them and still try to be safe even though [it was] not." Doc. 40-1 at 26 (97:20-21). That sentiment was based on his experience working for similar employers throughout his career. *Id*. at 26 (97:19). As a practical matter, retrieving an extension ladder would have been a time-consuming endeavor.

Krieger testified that there was no extension ladder in the mezzanine.  Doc. 40-1 at 81 (23:11-21).  The only way to bring an extension ladder up to the mezzanine would have been to move a mechanical lift into place.  Doc. 46 at ¶ 6.  So there is evidence that Bradley felt obliged to proceed quickly with his assigned task despite any concerns he had, which tends to diminish his personal fault.

Although Illinois law furnishes the substantive standard under the contributory fault statute—contributory fault greater than 50 percent—whether this court may resolve that issue at summary judgment is a question of federal procedure.  *See Reynolds v. Henderson & Lyman*, 903 F.3d 693, 697 (7th Cir. 2018) ("[S]tate law does not dictate the allocation of tasks between the judge and the jury in a federal court … ."); *Maroules v. Jumbo, Inc.*, 452 F.3d 639, 645 (7th Cir. 2006) ("Although state law provides the substantive law in a diversity action, summary judgment procedure is governed by federal law."); *Fidelity & Deposit Co. of Maryland v. Rotec Indus., Inc.*, 392 F.3d 944, 949 (7th Cir. 2004) ("[I]n *all* cases in federal court, including diversity cases, the allocation of responsibility between judge ('law') and jury ('fact') is governed by federal rather than state law.").  Under the federal standard, "[t]he issue of contributory negligence is ordinarily not susceptible to summary adjudication and generally should be resolved in the ordinary manner at trial."  *Trotter v. Anderson*, 417 F.2d 1191, 1192 (7th Cir. 1969); *see also Knauss v. Wendy's Old Fashioned Hamburgers of N.Y., LLC*, 2018 WL 4503943, at *5 (N.D. Ill. Sept. 20, 2018) ("[W]hen determining the plaintiff's contributory negligence depends on disputed facts, it is for the trier of fact to decide.") (quotation marks omitted).  The ordinary rule controls here because a reasonable factfinder could reject the United States's contributory fault defense based on the mixed evidence available at this stage.

15

## Conclusion

The United States's summary judgment motion is denied. This case will proceed to trial.

May 7, 2021

_____
United States District Judge